IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEREMIAH F. KANE,                        )
  as Guardian Ad Litem of K.J.           )   Civil Action
  and I.J.P also known as I.P.,          )   No. 12-cv-06649
  Both Minors,                           )
                             )
          Plaintiff                  )
                             )
     vs.                               )
                             )
CHESTER COUNTY DEPARTMENT OF             )
  CHILDREN, YOUTH AND FAMILIES;          )
SARAH SCOTTO, Caseworker;                )
SANDRA THOMAS, Supervisor;               )
THE CHILDREN'S HOME OF READING           )
  YOUTH & FAMILY SERVICES, INC.;         )
MICHAEL ROCK, CHOR Case Manager;         )
TRISTA MORRISSEY;                        )
CARMEN RIVERA, Supervisor;               )
KATHRYN REECE, Caseworker;               )
NANCY WARWICK, Caseworker; and           )
SHADELL QUINONES, Supervisor,            )
                             )
          Defendants                 )

\*       \*       \*

APPEARANCES:

        NEIL E. JOKELSON, ESQUIRE
            On behalf of Plaintiff

        GUY A. DONATELLI, ESQUIRE
            On behalf of Defendants Chester County Department
            of Children, Youth and Families; Sarah Scotto;
            and Sandra Thomas

        JOSEPH L. TURCHI, ESQUIRE
            On behalf of Defendants The Children's Home of
            Reading Youth & Family Services, Inc.; Michael
            Rock; Trista Morrissey; Carmen Rivera; Kathryn
            Reece; Nancy Warwick; and Shadell Quinones

\*       \*       \*

JAMES KNOLL GARDNER
United States District Judge

**O P I N I O N**

**TABLE OF CONTENTS**

<u>Section</u>                                                          <u>Page</u>

<u>SUMMARY OF DECISION</u>........................................... 3

<u>JURISDICTION</u>................................................. 7

<u>VENUE</u>....................................................... 7

<u>PROCEDURAL HISTORY</u>.......................................... 7

<u>STANDARD OF REVIEW</u>.......................................... 9

<u>FACTS</u>....................................................... 12

<u>CONTENTIONS OF THE PARTIES</u>.................................. 20

  <u>Contentions of CHOR Defendants</u>............................ 20

  <u>Contentions of CYF Defendants</u>............................. 21

  <u>Contentions of Plaintiff</u>.................................. 22

<u>DISCUSSION</u>.................................................. 23

  <u>Agency of County Improper Defendant</u>....................... 23

  <u>Count I - Section 1983</u>.................................... 25

    <u>Monell</u> Liability - Policy or Custom...................... 26

    <u>Monell</u> Liability - Failure to Train..................... 29

      <u>Pattern-of-Violations Theory</u>.......................... 30

      <u>Single-Violation Theory</u>.............................. 31

    <u>State-Created Danger</u>.................................... 33

      <u>Shocking the Conscience</u>.............................. 35

      <u>Affirmative State Action</u>............................. 36

  <u>Count II - Intentional Infliction of Emotional Distress</u>..... 38

    <u>Extreme and Outrageous Conduct</u>.......................... 39

    <u>Physical Manifestation of Emotional Distress</u>............. 41

  <u>Count III - Breach of Fiduciary Duty</u>..................... 43

  <u>Punitive Damages</u>........................................ 45

  <u>Qualified Immunity</u>....................................... 46

    <u>Individual Defendants in their Official Capacity</u>......... 47

    <u>Individual Immunity -- Count I</u>.......................... 48

    <u>Individual Immunity -- Counts II and III</u>................. 51

      <u>Official Immunity</u>................................... 51

      <u>High Public Official Immunity</u>........................ 52

<u>CONCLUSION</u>.................................................. 54

This matter is before the court on the Motion of
Defendants, the Children's Home of Reading Youth and Family
Services, Inc., Michael Rock and Trista Morrissey, to Dismiss
Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6)
and (b)(1) of the Federal Rules of Civil Procedure, filed
March 25, 2013 ("CHOR Motion to Dismiss").[1]  Also before the
court is the Motion to Dismiss Second Amended Complaint Pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure of
Defendants The Chester County Department of Children, Youth and
Families and Its Employees, Sarah Scotto, Sandra Thomas, Carmen
Rivera, Nancy Reece, Katheryn Warwick and Shadell Quinones,
filed March 26, 2013 ("CYF Motion to Dismiss").[2]

## SUMMARY OF DECISION

In the within action, plaintiff Jeremiah F. Kane, as
guardian ad litem of minors K.J. and I.J.P., asserts federal

---

[1]     Document 30.  Plaintiff['s] Amended Response to the Motion to
Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6) and
(b)(1) of the Federal Rules of Civil Procedure of Defendants The Children's
Home of Reading Youth & Family Services, Inc., Trista Morrissey and Michael
Rock ("Plaintiff's Response to CHOR Motion to Dismiss") was filed April 8,
2013 (Document 33).

       I have amended the title of plaintiff's response to reflect the
fact that this matter was brought by a singular plaintiff, Jeremiah F. Kane,
as guardian ad litem of K.J. and I.J.P.  As such, I have referred to
plaintiff in the singular throughout this Opinion.

[2]     Document 31.  Plaintiff['s] Response in Opposition to the Motion
to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure of Defendants The Chester County
Department of Children, Youth & Families and Its Employees, Sarah Scotto,
Sandra Thomas, Carmen Rivera, Nancy Reece, Katherine Warwick and Shadell
Quinones, was filed April 9, 2013 ("Plaintiff's Response to CYF Motion to
Dismiss")(Document 34).

civil rights violations and state tort claims against defendants
The Children's Home of Reading Youth and Family Services, Inc.
("CHOR"), Michael Rock, and Trista Morrissey (collectively "CHOR
defendants"), and Chester County Department of Children, Youth &
Families ("CYF"), Sarah Scotto, Sandra Thomas, Carmen Rivera,
Nancy Reece, Katherine Warwick, and Shadell Quinones
(collectively "CYF defendants").

　　　　Plaintiff contends that defendants' failure to report
an incident of sexual misconduct to the guardian ad litem and
the court resulted in a deprivation of the minors' federal
substantive due process rights because the minors remained in an
environment where they were subjected to further abuse.
Plaintiff further contends that such conduct constituted
violations of the Pennsylvania state torts of intentional
infliction of emotional distress and breach of fiduciary duties
by defendants.

　　　　Both motions to dismiss seek to dismiss plaintiff's
Second Amended Complaint in its entirety.  For the reasons
expressed below, the CYF Motion to Dismiss and the CHOR Motion
to Dismiss are each granted in part and denied in part.

　　　　Specifically the CYF Motion to Dismiss is granted to
the extent that it seeks to dismiss claims against CYF as an
improper defendant.  Accordingly, I dismiss all claims against

CYF and grant plaintiff leave to amend his complaint and include Chester County itself as the proper defendant.

Additionally, the CYF Motion to Dismiss is granted to the extent that it seeks dismissal of the following claims in Count I which plaintiff has not adequately pled: (1) a <u>Monell</u>[3] municipal liability claim based on policy or custom; (2) <u>Monell</u> municipal liability for failure to train under a pattern-of-violation theory; and (3) state-created-danger liability. Accordingly, I dismiss such claims against the CYF defendants from Count I of the Second Amended Complaint.

The CHOR Motion to Dismiss is granted to the extent that it seeks dismissal of Count I based on state-created-danger liability because plaintiff's Second Amended Complaint does not adequately state such claim.  Accordingly, I dismiss that claim against the CHOR defendants from Count I of the Second Amended Complaint

Furthermore, the CYF Motion to Dismiss is granted to the extent that it seeks dismissal of plaintiff's claims for intentional infliction of emotional distress and breach of fiduciary duty against defendant CYF because such claims are barred by the Pennsylvania Political Subdivision Tort Claims Act.

---

[3]     <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611, 638 (1978).

The CYF Motion to Dismiss and the CHOR Motion to Dismiss are each granted to the extent that they seek dismissal of minor I.J.P.'s claim for intentional infliction of emotional distress because plaintiff has failed to adequately state that claim.  Accordingly I dismiss I.J.P.'s claim for intentional infliction of emotional distress against the individual CYF defendants and the CHOR defendants from Count II of the Second Amended Complaint.

Furthermore, the CYF Motion to Dismiss and the CHOR Motion to Dismiss are each granted to the extent that they seek qualified immunity for all claims against the individual defendants in their official capacities.  In addition, the CYF Motion to Dismiss and the CHOR Motion to Dismiss are each granted to the extent that they seek qualified immunity for the claims in Count I against the individual defendants in their individual capacities.

However, in all other respects, the CYF Motion to Dismiss and the CHOR Motion to Dismiss are each denied.

Accordingly, as a result of these rulings, the following claims remain in plaintiff's Second Amended Complaint: (1) a claim in Count I of the Second Amended Complaint against CYF for Monell municipal liability under a single-violation theory of liability; (2) a claim in Count II of the Second Amended Complaint against CHOR, the individual CHOR defendants

in their individual capacities, and the individual CYF defendants in their individual capacities for intentional infliction of emotional distress to minor K.J.; and (3) a claim in Count III of the Second Amended Complaint against CHOR, the individual CHOR defendants in their individual capacities, and the individual CYF defendants in their individual capacities for breach of fiduciary duty.

### JURISDICTION

This court has original jurisdiction over the subject matter of plaintiff's 42 U.S.C. § 1983 claim based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction over plaintiff's Pennsylvania pendent state-law claims pursuant to 28 U.S.C. § 1367.

### VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Boyertown, Berks County, Pennsylvania, which is located in this judicial district.  See 28 U.S.C. §§ 118, 1391(b).

### PROCEDURAL HISTORY

Plaintiff Jeremiah F. Kane, as guardian ad litem of minors K.J. and I.J.P., commenced this action on November 28,

2012 by filing a Complaint against the CYF defendants and the CHOR defendants.[4]

On December 31, 2013, the CYF defendants filed their Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure of Defendants the Chester County Department of Children, Youth and Families and Its Employees, Sarah Scotto, Sandra Thomas, Carmen Rivera, Nancy Reece, Katheryn Warwick and Shadell Quinones.[5]

On January 25, 2013, the CHOR defendants filed their Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure of Defendants, The Children's Home of Reading Youth and Family Services, Inc., Michael Rock and Trista Morrissey.[6]

On February 6, 2013, plaintiff filed Plaintiff's Amended Complaint.[7]  On February 20, 2013, the CHOR defendants filed their Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure of Defendants, The Children's Home of Reading Youth and Family Services, Inc., Michael Rock and Trista Morrissey.[8]  On February 20, 2013, the CYF defendants

---

[4]     Document 1.

[5]     Document 19.

[6]     Document 21.

[7]     Document 24.

[8]     Document 25.

filed their Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure of Defendants the Chester County Department of Children, Youth and Families and Its Employees, Sarah Scotto, Sandra Thomas, Carmen Rivera, Nancy Reece, Kathryn Warwick, and Shadell Quinones.[9]

On March 6, 2013, plaintiff filed the operative pleading, Plaintiff's Second Amended Complaint ("Second Amended Complaint").[10]  By Order dated March 15, 2013 and filed March 18, 2013, I approved the parties' Stipulation of Consent Pursuant to F.R.C.P. 15(a)(2) by All Defendants to the Filing of a Second Amended Complaint and ordered that plaintiff's Second Amended Complaint be deemed appropriately filed.[11]

On March 25, 2013 the CHOR defendants filed the within CHOR Motion to Dismiss.  On March 26, 2013 the CYF defendants filed the within CYF Motion to Dismiss.

<u>**STANDARD OF REVIEW**</u>

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84

---

[9]    Document 26.

[10]   Document 27.

[11]   Documents 28 (stipulation) and 29 (Order).

(1957) (abrogated in other respects by <u>Bell Atlantic Corporation</u> <u>v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on a motion to dismiss, the court relies on the complaint, exhibits attached to the complaint, and matters of public record, including other judicial proceedings. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[12]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  <u>Fowler</u>, 578 F.3d at 210 (citing

---

[12]    The United States Supreme Court's Opinion in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all civil suits in the federal courts.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. <u>Fowler</u>, 578 F.3d at 210 (quoting <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Phillips, 515 F.3d at 231. Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted. Fowler, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial

experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  <u>Iqbal</u>, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

## FACTS

Based upon the averments in plaintiff's Second Amended Complaint, which I must accept as true under the applicable standard of review discussed above, the pertinent facts are as follows.

In December 2008 the mother of minors K.J. and I.J.P. placed the minors with defendant Chester County Department of Children, Youth, and Families.[13]  CYF determined that the minors needed to be moved to a foster home and placed them with Angelica and David Hernandez.[14]  Defendant The Children's Home of Reading Youth and Family Services, Inc. was responsible for

---

[13]     Second Amended Complaint ¶ 19.

[14]     <u>Id.</u> at ¶ 21.

supervising the activities in the Hernandez foster home placement.[15]

On January 8, 2009 plaintiff Jeremiah F. Kane, Esquire, was appointed as the guardian ad litem of the minors.[16] On January 23, 2009, the minors were adjudicated dependent and CYF and CHOR were charged with the duty to provide for their protection and safety.[17]  Additionally, on January 8, 2009, Judge Jacqueline C. Cody of the Chester County Court of Common Pleas issued an Order which provided:

> Any individual or agency having relevant information pertinent to the child(ren), including but not limited to medical, psychological and educational information, is hereby ordered and directed to release the same, if requested, to the above referenced attorney/guardian ad litem, pursuant to Section 6311(b)(2).[18]

Plaintiff Kane made clear to CHOR and CYF that he needed to be informed of all material information relating to the well-being and welfare of the minors.[19]  Guardian ad litem Kane periodically met with representatives of CHOR and CYF to

---

[15]    Second Amended Complaint ¶ 21.

[16]    Id. at ¶ 22.

[17]    Id. at ¶ 23.

[18]    Id.

[19]    Id. at ¶ 23(a).

receive updates concerning the care and treatment of the minors.[20]

On February 2, 2009, CYF caseworker Kathryn Reece received a phone call from Trista Morrissey of CHOR. On that call Ms. Morrissey told Ms. Reece that during her last visit to the Hernandez foster home, Mrs. Hernandez notified her of an incident where another child, I.S., was displaying sexual behaviors toward K.J. which consisted of I.S. "humping" K.J. while both children were clothed and asking K.J. if he liked it.[21]

Ms. Morrissey told Mrs. Hernandez that she should not leave the children alone and that CHOR will be monitoring the situation very closely to ensure that nothing further occurs.[22] Ms. Reece recorded the information in the CYF Chronology (case file). As a result, Carmen Rivera, Ms. Reece's supervisor, should have been aware of the incident because she is required to review the chronology with her caseworker.[23]

Defendants CHOR, CYF, Reece, Morrissey, and Rivera all made a deliberate decision not to inform either the guardian ad

---

[20]    Second Amended Complaint ¶ 23(a).

[21]    Id. at ¶ 24.

[22]    Id.

[23]    Id.

litem or the court of the incident.  Rather, they concealed the
incident from Mr. Kane.[24]

Defendants concealed the incident from Mr. Kane many
times from February 2009 until February 2010 when defendants
Reece, Rivera, Scotto, and Thomas prepared numerous reports on
behalf of CYF and had contact with plaintiff Kane wherein they
failed to mention the incident of sexual misconduct which
occurred on February 2, 2009.[25]  Such withholding of information
was a deliberate and conscious decision which prevented
plaintiff Kane and the court from attempting to remediate past
harm and prevent future harm to K.J. and I.J.P.[26]

On September 15, 2009, after a home visit conducted by
defendant Michael Rock on behalf of CHOR and defendant Sarah
Scotto on behalf of CYF, Mr. Rock and Ms. Scotto reported that
K.J. still gets angry in the home and was quiet and not
interested in conversations.  Defendants failed to correlate
this this information with any reference to the sexual
misconduct.[27]

On November 25, 2009, I.J.P. underwent a psychological
evaluation by Dale K. Horst, M.A. in order to assess I.J.P.'s

---

[24]     Second Amended Complaint ¶ 24.

[25]     Id. at ¶¶ 24(a), 24(b), 24(c), 24(d), 24(f), 25, 28(a), 30(a).

[26]     Id. at ¶ 26.

[27]     Id. at ¶ 30(a).

medical necessity for behavioral health rehabilitation services.[28]   Although all defendants had knowledge of the sexual misconduct, they knowingly failed to communicate such information to Mr. Horst so that a proper evaluation could be done for I.J.P.[29]

On December 11, 2009, CYF transferred the minors' case internally from the CYF unit for foster case to the CYF adoption unit where Nancy Warwick and her supervisor Shadell Quinones worked.[30]   Defendants Warwick and Quinones had the duty to review the entire CYF Chronology upon transfer of the case.   Yet neither defendant informed the guardian ad litem or the court about the sexual misconduct.[31]

On January 7, 2010, K.J. was psychologically evaluated by Michael Boerger, M.S. who stated that K.J.'s primary clinical concerns are related to his mood disturbance.[32]   The report stated that the issues were believed to be related to his history of trauma as well as placement in foster care.[33]

---

[28]   Second Amended Complaint ¶ 32.

[29]   Id.

[30]   Id. at ¶ 33.

[31]   Id.

[32]   Id. at ¶ 34(a).

[33]   Id.

On February 8, 2010 Mrs. Hernandez, the foster mother, told defendant Rock that K.J. and his brother I.J.P. were getting undressed in the bedroom and while they were naked, K.J. came up behind I.J.P., who had leaned over, and K.J. had his penis hear I.J.P.'s rear buttocks and motioned as if he was having sex with his brother.[34]

On March 25, 2010, K.J. underwent a psychiatric evaluation by Marco Ercole, M.D., whose evaluation report stated that there was no material in the record concerning a history of presenting problems and that K.J.'s "problematic behavior is something of a mystery. It is not clear to me what may be driving his problem behavior in school and at home".[35] Defendants did not provide Dr. Ercole with any information concerning the sexual behavior and contacts of K.J.[36]

On April 5, 2010, defendant Rock filed an incident report which stated that the two boys were "humping each other" all weekend long and that both boys were aroused by the act.[37] The report failed to describe the conduct on February 8, 2010.[38]

---

[34]   Second Amended Complaint ¶ 35.

[35]   Id. at ¶ 37.

[36]   Id.

[37]   Id. at ¶ 36(a).

[38]   Id.

The CYF Chronology described another incident where:

> [another foster child] was on top of K.J.,
> humping him, and saying "you be the girl and I'll
> be the boy" and "say you like it, say you like
> it". Mrs. Hernandez said when she [c]aught them
> she took the blanket off them and separated them.
> She stated that their pan[t]s were on but
> unbuttoned. Both children had erections. Mrs.
> Hernandez stated that this incident was provoked
> by [the other foster child] and that K.J. looked
> like he was going along with it.[39]

On April 12, 2010, Judge John L. Hall of the Court of Common Pleas of Chester County terminated the parental rights of both parents of each minor.[40] At this time, guardian ad litem Kane was first informed about the sexual activity taking place in the foster home.[41]

Plaintiff Kane then reviewed the CYF Chronology and read about the sexual activity which had taken place in the foster home.[42] Plaintiff Kane then contacted CYF and defendant Warwick and told her to remove the minors from their foster placement as soon as possible.[43] The minors were removed from the Hernandez home on April 15, 2010.[44]

---

[39]    Second Amended Complaint ¶ 38(a).

[40]    Id. at ¶ 39.

[41]    Id. at ¶ 40.

[42]    Id.

[43]    Id.

[44]    Id. at ¶ 41.

During an interview at the Joseph J. Peters Institute on July 23, 2010, minor I.J.P. disclosed that he was abused by another foster child in the Hernandez home, that he was touched in the private parts and that he touched the other child's private parts.[45]  I.J.P. further disclosed that the boys performed oral sex on one another and would put their genitals on one another with their clothes on.[46]

After interviewing K.J., Dr. Linda Shope drafted a report dated August 26, 2010 which stated:

> Because the first incident between [the other foster child] and K.J. 'flew under the radar' and was never addressed formally, it is possible that a 'message' was thus given to the Hernandez's that this incident and those behaviors were not of enough concern to require intervention.  If other sexualized behaviors had occurred, a foster family might conclude, after the lack of response to the first incident, that the behaviors were not serious, or that if they did report them, nothing would happen.[47]

The report went on to state "As such K.J. is assigned a diagnosis of PTSD ...."[48]

---

[45]     Second Amended Complaint ¶ 43.

[46]     Id.

[47]     Id. at ¶ 46.

[48]     Id.

-19-

## CONTENTIONS OF THE PARTIES

### Contentions of CHOR Defendants

The CHOR Motion to Dismiss seeks to dismiss the Second Amended Complaint on the grounds that the conduct of the CHOR defendants is discretionary conduct and, as such, is protected by the doctrine of qualified immunity.  The CHOR defendants further argue that Count I should be dismissed because plaintiff fails to state a Section 1983 claim.  Specifically, they argue that the facts alleged do not establish a claim that the CHOR defendants are liable under a state-created-danger theory for constitutional violations suffered by the minors.

Furthermore, the CHOR defendants seek dismissal of Counts II and III, alleging that plaintiff failed to state a claim upon which relief can be granted.  Specifically, the CHOR defendants argue that plaintiff has not stated a claim in Count II for intentional infliction of emotional distress because plaintiff has not pled extreme and outrageous conduct or a physical manifestation of emotional distress.  The CHOR defendants argue that Count III should be dismissed because plaintiff has not stated a claim that the CHOR defendants breached a fiduciary duty owed to the minors.

Finally, the CHOR defendants argue that the demand in the Second Amended Complaint for punitive damages should be

dismissed because the conduct alleged does not constitute reckless indifference.

### Contentions of CYF Defendants

The CYF defendants move to dismiss the Second Amended Complaint in its entirety.  They first argue that the Second Amended Complaint should be dismissed because it incorrectly names the agency, Chester County Department of Children, Youth and Families, and agency employees as independent defendants, whereas, the claim should be asserted against Chester County because the agency is not a separate legal entity.

The CYF Motion to Dismiss next argues that the discretionary conduct of the CYF defendants is protected by the doctrine of qualified immunity because plaintiff has not pleaded a right that was so clearly established that a reasonable caseworker would have known he or she was violating it.

The CYF Motion to Dismiss further asserts that Count I should be dismissed because plaintiff has failed to allege conduct under Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611, 638 (1978) which is sufficient to impose Section 1983 liability against the county either under a policy- or custom-theory, or under a failure-to-train theory.  Moreover, the CYF Motion to Dismiss contends that plaintiff's Second Amended Complaint fails

to allege conduct which states a Section 1983 claim under a state-created-danger theory.

The CYF Motion to Dismiss next states that Counts II and III should be dismissed because they are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541 to 8564, and the doctrine of high-public-official immunity.  The CYF defendants further argue that the Second Amended Complaint does not allege sufficiently extreme and outrageous conduct to support an intentional-infliction-of-emotional-distress claim in Count II, nor does it allege facts sufficient to support a breach-of-fiduciary-duty claim in Count III.

## Contentions of Plaintiff

Plaintiff Jeremiah F. Kane, as guardian ad litem for the minors, contends that the Second Amended Complaint should not be dismissed because the defendants are not protected by any applicable immunities and because the Second Amended Complaint adequately states a claim against them in Counts I, II, and III.

Specifically, plaintiff argues that he has alleged a Section 1983 claim against CYF sufficient to impose liability under Monell and for state-created danger, and that he has sufficiently alleged a Section 1983 claim against the CHOR defendants for a state-created danger.

Plaintiff further alleges that the Second Amended Complaint has sufficiently stated a claim in Count II for intentional infliction of emotional distress against the individual CYF defendants and the CHOR defendants because their alleged conduct was extreme and outrageous.  Plaintiff asserts that the Second Amended Complaint has sufficiently stated a claim in Count III for breach of fiduciary duty because defendants had a fiduciary relationship with the minors which imposed duties upon defendants which defendants breached.

Finally, plaintiffs argue that punitive damages are appropriate in this matter because the Second Amended Complaint alleges conduct which at least constitutes reckless indifference.

## DISCUSSION

### Agency of County Improper Defendant

In the CYF Motion to Dismiss, the CYF defendants argue that because CYF is a department of the County of Chester and not a separate legal entity from the County of Chester, CYF is not independently subject to suit.  The Plaintiff's Response to CYF Motion to Dismiss contends that CYF is subject to suit

because CYF maintains its own independent legal existence separate and apart from the executive powers of Chester County.[49]

Neither the Second Amended Complaint nor Plaintiff's Response to CYF Motion to Dismiss establishes that CYF is a separate legal entity subject to suit.  Additionally, a review of Chester County, Pennsylvania's Comprehensive Annual Financial Report reveals that the Chester County Department of Children, Youth, and Families is not listed as a legal entity separate from the County of Chester.[50]  Therefore, I conclude that the Chester County Department of Children, Youth and Families is not a legal entity separate from the County of Chester.

Accordingly, I grant the CYF Motion to Dismiss to the extent that it seeks dismissal of claims against Chester County Department of Children, Youth and Families.  However, I also grant plaintiff leave to amend his Second Amended Complaint to

---

[49]    Plaintiff's Second Amended Complaint alleges that CYF is "a governmental entity of Chester County Pennsylvania."  See Second Amended Complaint ¶ 5.

[50]    The Management's Discussion and Analysis section of the Comprehensive Annual Financial Report of the County of Chester, Pennsylvania For the Year Ended December 31, 2012 lists the six county component units, described as legally separate units, as including the Solid Waste Authority, the Area Airport Authority, the Water Resources Authority, the Library Board, the Visitors and Conference Bureau, and the General Authority.  The Department of Children, Youth and Families is discussed throughout the report, yet not listed as a legally separate unit.  See Comprehensive Annual Financial Report, page 8, http://www.chesco.org/DocumentCenter/View/12314.

include the County of Chester, Pennsylvania, as a proper

defendant in place of CYF.[51]

### Count I - Section 1983

Plaintiff's Second Amended Complaint asserts a

constitutional claim against all defendants pursuant to

42 U.S.C. § 1983.  Section 1983 is an enabling statute that does

not create any substantive rights, but provides a remedy for the

violation of federal constitutional or statutory rights.

Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).  To state a

claim under Section 1983, plaintiff must allege that a defendant

acting under color of state law deprived minors of a federal

constitutional or statutory right.  Gruenke, 225 F.3d at 298.

"The touchstone of due process is the protection of

the individual against arbitrary action of government." Miller

v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999)

(internal quotations omitted).  To incur liability, the

objective character of the government action must demonstrate

deliberate indifference to the constitutional violation.  Nicini

v. Morra, 212 F.3d 798, 811 (3d Cir. 2000).

Plaintiff's Second Amended Complaint alleges three

theories under which the minors' rights were violated when they

---

[51]     For the purpose of this Opinion, because CYF is an agency of the
County of Chester, I have decided to evaluate plaintiff's claims against CYF
as if they were stated against the proper defendant, the County of Chester.
However, if plaintiff intends to move forward with such claims, he must amend
the Second Amended Complaint to name the proper defendant.

were subjected to instances of sexual misconduct while in a foster home: (1) _Monell_ municipal liability against CYF based on a policy or custom; (2) _Monell_ liability for failure to train based on a pattern-of-violation theory; and (3) state-created danger.[52]

## _Monell_ Liability - Policy or Custom

Following the United States Supreme Court decision in _Monell_, a local government cannot be sued pursuant to Section 1983 for injuries inflicted solely by its employees.  436 U.S. at 694, 98 S.Ct. at 2037-2038, 56 L.Ed.2d at 638.  Rather, local governments can only be held liable under Section 1983 for "their own illegal acts".  _Connick v. Thompson_, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417, 426 (2011) (internal quotations omitted).

The United States Court of Appeals for the Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an

---

[52]     Although plaintiff did not delineate in his Second Amended Complaint which theories of liability were asserted against which defendants, Plaintiff's Response to CYF Motion to Dismiss argues that the CYF defendants are liable under _Monell_ for a policy or custom, failure to train, and a state-created-danger theory.  Plaintiff's Response to CHOR Motion to Dismiss argues only that the CHOR defendants are liable under a state-created-danger theory.

> official with authority has ratified the unconsti-
> tutional actions of a subordinate, rendering such
> behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted).  Plaintiff appears to allege that CYF should be liable under the first theory, because CYF "had in place a policy, practice or custom that caused the deprivation of a constitutional right."[53]

In support of this contention, the Second Amended Complaint alleges that defendants' failure to report the sexual incident was in accordance with institutional policies which allowed for children for whose safety they were responsible "to be kept in dangerous placements and not to receive prompt psychological or remediative treatment and service following an incident such as the one that occurred in February 2009."[54]

The Second Amended Complaint alleges that these policies consisted of failure to (1) properly train and apprise their respective employees as to their duties to report to guardians ad litem; (2) provide case workers with training necessary for supervising and assisting children; (3) promptly cause treatment or other appropriate remediation efforts including a change in placement or the institution of an

---

[53]    Plaintiff's Response to CHOR Motion to Dismiss, page 36.

[54]    Second Amended Complaint ¶ 55(b).

appropriate safety plan for children exposed to inappropriate conduct; and (4) promptly notify the court or guardian ad litem when the well-being of children has been jeopardized.[55]

Thus plaintiff seems to have alleged that the municipal policy in question was a policy of not requiring caseworkers to take any action, upon learning about instances of sexual abuse, beyond recording the incident in the case file.

However, the Second Amended Complaint has not alleged any practices that are persistent and widespread beyond this one particular case.  The Second Amended Complaint offers only bald assertions that such policy or custom existed without any facts to support that what happened to the minors was not the result of "idiosyncratic actions of individual public actors."  Burke v. Township of Cheltenham, 742 F.Supp.2d 660, 676 (E.D.Pa. 2010)(Dalzell, J.).

Plaintiff has not pled sufficient facts to suggest that the actions listed above were a persistent and widespread practice or custom.  Therefore, I conclude that plaintiff's allegations do not satisfy the Twombly pleading standard because the factual averments regarding CYF's policy, custom, or practice are nothing more than "bald assertions" which fail to state a claim upon which relief can be granted.  In re

---

[55]     Second Amended Complaint ¶¶ 55(b)(i) to (iv).

Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-1430 (3d Cir. 1997).

        As such, I grant the CYF Motion to Dismiss to the extent that it seeks dismissal of plaintiff's Monell municipal liability claim in Count I based upon a policy or custom. However, I grant plaintiff leave to amend the Second Amended Complaint to clearly aver the factual and legal basis for a Monell municipal-liability claim based on a policy- or custom-theory and to clearly delineate against which defendant or defendants such claim is being asserted.

### Monell **Liability - Failure to Train**

        A municipality's failure to adequately train its employees gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an individual's civil rights, and is "closely related to the ultimate injury." Kline ex rel Arndt v. Mansfield, 255 Fed.Appx. 624, 629 (3d Cir. 2007) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412, 428 (1989)).

        The Third Circuit Court of Appeals has noted that establishing municipal liability on a Monell claim for inadequate training is difficult. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Generally, deficient training can only amount to the requisite deliberate indifference "where the

failure to train has caused a pattern of violations." Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir.2000).

However, an exception exists and a "failure to train" Monell claim may proceed absent a pattern of violations if (1) a violation of federal rights may be a highly predictable consequence of a failure train officials to handle recurrent situations; and (2) the likelihood of recurrence and predictability of the violation of a citizen's rights "could justify a finding that [the] policymakers' decision not to train an officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice -- namely, a violation of a specific constitutional or statutory right." Kline, 255 Fed.Appx. at 629 (quoting Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391 137 L.Ed.2d 626, 642 (1997)).

Plaintiff has not specified whether his failure-to-train claim rests upon a pattern-of-violation theory or a single-violation theory.  Accordingly, I evaluate his claim under both theories.

### Pattern-of-Violations Theory

With respect to a "pattern-of-violations" theory, the Second Amended Complaint is devoid of any reference to any other occasion where a CYF employee failed to report a sexual incident to a guardian ad litem, or the court, and by such failure caused

a person or persons to be subjected to sexual abuse or misconduct.  The paragraph alleging deficient training mentions no other person or persons whose rights were violated because of defendants' deficient training.

Furthermore, the Second Amended Complaint does not plead sufficient facts to support a reasonable inference of a "pattern of similar constitutional violations by untrained employees" which "demonstrate[s] deliberate indifference" to the rights of persons with whom the untrained employees come into contact.  Connick, 131 S.Ct. at 1360, 179 L.Ed.2d at 427.  The facts pled describe a single incident which is by definition insufficient, pursuant to Twombly, to state a "failure to train" Monell claim under a "pattern-of-violations" theory.

Therefore, I grant the CYF Motion to Dismiss to the extent that it seeks to dismiss plaintiff's Section 1983 Monell claim against CYF for failure to train under a pattern-of-violation theory.  I grant plaintiff leave to amend his Second Amended Complaint to clearly aver the factual and legal basis for a "failure-to-train" claim under a pattern-of-violations theory and to clearly delineate which defendant or defendants against whom they are asserting such a claim.

### Single-Violation Theory

Plaintiff avers that defendants failed to properly train and apprise their respective employees as to the

employees' duty to report to guardians ad litem and to the court on a timely basis and failed to provide caseworkers and supervisors with the necessary training for supervising and assisting children who experience inappropriate sexual conduct.[56]

Merely alleging that a single injury "could have been avoided if an employee had had better or more training" is insufficient to state a cause of action.  Connick, 131 S.Ct. at 1363-1365, 179 L.Ed.2d at 431-432 (internal brackets omitted).

Instead, plaintiff must show that the need for the county to provide specific training in order to avoid constitutional injury was "highly predictable" or "patently obvious".  Connick, 131 S.Ct. at 1360, 179 L.Ed.2d at 427.  For example, in City of Canton v. Harris, 489 U.S. 378, 390 n.10, 109 S.Ct. 1197, 1205 n.10, 103 L.Ed.2d 412, 428 n.10 (1989) the United States Supreme Court stated that if a city armed its police officers with firearms, and deployed those police officers into the public to capture fleeing felons, the need to instruct the officers on the constitutional limitation on using deadly force in apprehending fleeing felons would be patently obvious.  Therefore, if an untrained police officer violated a citizen's constitutional rights in using deadly force, this

---

[56]     Second Amended Complaint ¶ 55(b)(i) to (ii).

would be a "highly predictable consequence" of the city's
failure to train.

Occasions for caseworkers to deal with instances of
sexual conduct are likely to recur in the course of caseworkers'
duties, perhaps even with sufficient frequency to create a need
for the county to provide specific training on the duties to
report sexual misconduct to guardians ad litem and to the court
on a timely basis and to create a need for specific training on
supervising children who experience inappropriate sexual conduct
and the necessity to obtain appropriate help on a timely basis.

Therefore, violation of a child's constitutional
rights could be a highly predictable consequence of the child
being subject to continued inappropriate sexual conduct.  As
such, plaintiff has sufficiently stated a claim for a failure to
train under a "single-violation" theory.

Accordingly, I deny the CYF Motion to Dismiss to the
extent that it seeks to dismiss plaintiff's Section 1983 <u>Monell</u>
claim against CYF for failure to train under a single-violation
theory.

### State-Created Danger

Generally, the Due Process Clause of the Fourteenth
Amendment does not impose an affirmative duty upon the state to
protect citizens from the acts of private individuals.  <u>See</u>
<u>DeShaney v. Winnebago County Department of Social Services</u>,

489 U.S. 189, 198-200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).
However, there are two exceptions to this general rule.  First,
the state has a duty to protect or care for individuals when a
"special relationship" exists.  Second, the state has a duty
when a "state created danger" is involved.  See Morse v. Lower
Merion School District, 132 F.3d 902, 907 (3d Cir. 1997).

Here, plaintiff has alleged that CHOR, CYF and all
individual defendants are liable under a state-created-danger
theory for having violated the minors' substantive due process
right and making the minors substantially more vulnerable to
injury.

In the Third Circuit, to prevail on a state-created-
danger claim, a plaintiff must prove that: (1) the harm
ultimately caused was foreseeable and fairly direct; (2) a state
actor acted with a degree of culpability that shocks the
conscience; (3) a relationship between the state and the
plaintiff existed such that the plaintiff was a foreseeable
victim of the defendants' acts; and (4) a state actor
affirmatively used his or her authority in a way that created a
danger to the citizen or that rendered the citizen more
vulnerable to danger than if the state had not acted at all.
Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir.
2006)(internal citations omitted).

The CHOR and CYF defendants contend that plaintiff has failed to state a claim for state-created danger because he has failed to plead the second and fourth elements of that claim: that defendant acted with a degree of culpability that shocks the conscience, and that defendants used their authority in a way that created a danger to the citizen, or rendered the citizen more vulnerable to danger than if the state had not acted at all.

Shocking the Conscience

Plaintiff contends that defendants' actions shock the conscious because they caused the minors to be maintained in a foster home in which defendants were aware that sexual conduct with a child had occurred.[57]

"In any state created danger case, the state actor's behavior must always shock the conscience...what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible." Sanford v. Stiles, 456 F.3d 298, 310 (3d Cir. 2006).  Mere negligence is not enough to shock the conscience.  See Schieber v. City of Philadelphia, 320 F.3d 409, 419 (3d Cir. 2003).

---

[57]     Second Amended Complaint ¶ 58(a).

In this instance, plaintiff alleges that although defendants annotated the February 2009 sexual incident in the case file, defendants' failure to notify the guardian ad litem or the court about this incident should shock the conscious. However, in the Third Circuit, a similar failure to notify was not sufficient to rise to the level of culpability needed to shock the conscious.  See e.g. Sanford, 456 F.3d at 311 where the Third Circuit appeals court held that a guidance counselor's decision not to call the school psychologist or student's parents after meeting with student who may have been suicidal was not, under the circumstances, a decision which shocked the conscience.

### Affirmative State Action

In order to state a state-created-danger claim, plaintiff must "allege affirmative acts that were the 'but for cause' of the risks they faced," and "that failures to act cannot form the basis of a valid § 1983 claim."  Bennett ex rel. Irvine v. City of Philadelphia, 499 F.3d 281, 287-288 (3d Cir. 2007).

Plaintiff alleges that defendants acted in willful disregard for the safety of minors and that defendants subjected the minors to great risk of harm by failing to report the untoward sexual activity to the guardian ad litem and the court which caused the minors to continue to be subject to sexual

misconduct.[58]   Under both Third Circuit and United States Supreme Court rulings, such allegations do not satisfy the requirement for affirmative state action.   See <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical School</u>, 972 F.2d 1364, 1376 (3d Cir. 1992) where the Third Circuit Court of Appeals stated that indefensible passivity of school defendants including one defendant who was advised of misconduct and did not investigate, constitutes misconduct, but does not rise to the level of a constitutional violation.

See also <u>DeShaney v. Winnebago County Department of Social Services</u>, 489 U.S. 189, 203, 109 S.Ct. 998, 1007, 103 L.Ed.2d 249, 263 (1989) where the United States Supreme Court ruled that state-created danger did not apply because "[t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them."

Therefore, I conclude that plaintiff's allegations do not satisfy the <u>Twombly</u> pleading standard because plaintiff has not alleged facts which support defendants' liability for a state-created danger.   Therefore, under current law, plaintiff has failed to state a Section 1983 claim for state-created danger upon which relief can be granted.

---

[58]      Second Amended Complaint ¶ 57.

Accordingly, both the CHOR Motion to Dismiss and the CYF Motion to Dismiss are granted to the extent that they seek to dismiss plaintiff's Section 1983 claim for state-created danger. However, because there is no possible factual or legal basis under the facts alleged in plaintiff's Second Amended Complaint and under the rulings in the DeShaney and Middle Bucks Area Vocational Technical School cases, supra., under which plaintiff can plead a § 1983 constitutional violation based upon a claim for state-created danger, I dismiss plaintiff's claims on that theory against both defendants with prejudice and do not grant him leave to file a Third Amended Complaint on that theory.

## Count II - Intentional Infliction of Emotional Distress

Count II alleges a pendent Pennsylvania state-law cause of action for intentional infliction of emotional distress against all defendants.  The Supreme Court of Pennsylvania has stated that to prevail on an intentional-infliction-of-emotional-distress claim, plaintiff "must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."  Reeves v. Middletown Athletic Association, 866 A.2d 1115, 1122 (Pa.Super. 2004)(citing Hoy v. Angelone, 554 Pa. 134, 151, 720 A.2d 745, 754 (1998)).

The CYF defendants contend that plaintiff has not pled facts supporting a reasonable inference that defendants' conduct

was extreme and outrageous.  The CHOR defendants contend that plaintiff has not pled the requisite allegations that defendants conduct was extreme and outrageous, and that plaintiff has not alleged a physical manifestation of the minors' emotional distress.

Plaintiff's Response to the CYF Motion to Dismiss concedes that plaintiff's claim in Count II should be dismissed against CYF because the Pennsylvania Political Subdivision Tort Claims Act, 41 Pa.C.S.A. § 8542(a) bars the bringing of an action sounding in tort against CYF.  Accordingly, I grant the CYF Motion to Dismiss to the extent that it seeks to dismiss plaintiff's claim in Count II for intentional infliction of emotional distress against CYF.

## Extreme and Outrageous Conduct

Pennsylvania appellate courts define "extreme and outrageous conduct" as conduct "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."  Reeves, 866 A.2d at 1123 (citing Hoy, 554 Pa. at 151, 720 A.2d at 754).

The gravamen of plaintiff's emotional-distress claim is that the CHOR defendants and the individual CYF defendants intentionally, or with gross recklessness, acted outrageously by failing to: (1) appropriately monitor the condition of the

minors; (2) appropriately and timely advise the guardian ad litem as to change of circumstances; (3) appropriately place the minors in a foster home environment; (4) provide timely information to mental health professionals concerning the minors; (5) warn the guardian ad litem of the information which defendants received relative to the minors; and (6) conduct appropriate ongoing investigations of the foster home.[59]

This conduct could easily be considered so extreme and outrageous as to go beyond all possible bounds of decency in a civilized society.  See Jordan v. City of Philadelphia, 66 F.Supp.2d 638, 642 (E.D.Pa. 1999)(Joyner, J.) where the district court determined that plaintiff's contentions that defendants' actions constituted extreme and outrageous conduct were sufficient where such actions consisted of the following: (1) defendant was responsible for selection of a foster family; (2) plaintiffs were involuntarily committed to this foster home; (3) defendants should have known prior to placement that a member of the family was on a child-abuse listing; and (4) defendants acted in a manner that was deliberately indifferent and grossly negligent, especially in light of the fact that defendants had been verbally notified by the plaintiff about the sexual abuse.

---

[59]      Second Amended Complaint ¶¶ 61(A) to (F).

Therefore, in the case before this court, plaintiff has sufficiently pled that defendants' conduct was extreme and outrageous to state a claim for intentional infliction of emotional distress.

### Physical Manifestation of Emotional Distress

In order to state a claim for intentional infliction of emotional distress, plaintiff must suffer some type of resulting physical harm because of the defendants' outrageous conduct. Reeves, 866 A.2d at 1122-1123 (citing Fewell v. Besner, 444 Pa.Super. 559, 569, 664 A.2d 577, 582 (1995)); see also Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 197, 527 A.2d 988, 995 (1987). In Pennsylvania, a plaintiff must support the claim of physical harm resulting from emotional distress with competent expert medical evidence. DeBellis v. Kulp, 166 F.Supp.2d 255, 281 (E.D.Pa. 2001)(Van Antwerpen, J.).

Plaintiff's Second Amended Complaint contains portions of a report by Dr. Linda Shope, a psychiatrist who evaluated plaintiff K.J. Dr. Shope's report concludes that K.J. suffers from Post-Traumatic Stress Disorder.[60] As such, plaintiff has alleged a physical manifestation of harm with respect to plaintiff K.J. See Vicky M. v. Northeast Educational Intermediate Unit 19, 486 F.Supp.2d 437, 458 (M.D.Pa. 2007) on

---

[60]     Second Amended Complaint ¶ 46.

reconsideration, 2007 WL 2844428 (M.D.Pa. September 26, 2007), in which the district court denied a motion to dismiss where plaintiffs averred that the minor-plaintiff suffered severe emotional distress, including but not limited to post-traumatic stress disorder, fear, and developmental delays as a result of defendant's alleged acts.

Plaintiff's Second Amended Complaint does not contain any medical evidence supporting an allegation that minor I.J.P. suffered a physical manifestation of his emotional distress.

Therefore, plaintiff has sufficiently alleged some type of resulting physical harm from emotional distress with regard to minor K.J., but not with regard to minor I.J.P.

Accordingly, the CYF Motion to Dismiss is denied to the extent that it seeks to dismiss plaintiff's claim against defendants Scotto, Thomas, Rivera, Reece, Warwick, and Quinones in Count II with regard to minor K.J. because the Second Amended Complaint adequately pleads extreme and outrageous conduct and the requisite resulting physical harm.

However, the CYF Motion to Dismiss is granted to the extent that it seeks to dismiss plaintiff's claim against defendants Scotto, Thomas, Rivera, Reece, Warwick, and Quinones in Count II with regard to minor I.J.P. because, although the Second Amended Complaint adequately pleads extreme and

outrageous conduct, it fails to allege the requisite resulting physical harm.

Nonetheless, I grant plaintiff leave to amend the Second Amended Complaint to clearly aver the factual and legal basis for an intentional-infliction-of-emotional-distress claim with regard to minor I.J.P.

### Count III - Breach of Fiduciary Duty

Under Pennsylvania law, the relationship between a minor foster child and an agency caring for foster children, is a fiduciary relationship where one party is bound to act for the benefit of another.  See S.B. ex rel. D.M. v. City of Philadelphia, 2007 WL 3010528 (E.D.Pa. October 12, 2007) (Pollak, J).  See also Vicky M., 486 F.Supp.2d at 459, where the district court stated, "Failure to act in the other's interest results in breach of the duty imposed by the fiduciary relationship."

Plaintiff's Response to the CYF Motion to Dismiss concedes that plaintiff's claim against CYF in Count III should be dismissed because the Pennsylvania Political Subdivision Tort Claims Act[61] bars the bringing of an action sounding in breach of fiduciary duty against CYF.  Accordingly, I grant the CYF Motion

---

[61]    42 Pa.C.S.A. §§ 8541 to 8564.

to Dismiss to the extent that it seeks to dismiss plaintiff's claim in Count III for breach of fiduciary duty against CYF.

Defendants contend that plaintiff has not stated a claim for breach of fiduciary duty because plaintiff has not alleged that: (1) a fiduciary or confidential relationship existed; (2) defendants negligently or intentionally failed to act in good faith and solely for the benefit of the minors; or (3) defendants' failure to act solely for the minors' benefit was a real factor in bringing about the minors' injuries.

Here, plaintiff has adequately pled that a fiduciary relationship existed between the minor foster children plaintiffs and defendants, who were charged with their care. See S.B. ex rel. D.M., 2007 WL 3010528.  Furthermore, the conduct which plaintiff has alleged -- failing to protect the minors from abuse -- if proved, constitutes a breach of defendants' fiduciary duties.

As such, plaintiff has adequately stated a claim for a breach of fiduciary duties against CHOR and all individual defendants.  Accordingly, I deny the CHOR Motion to Dismiss to the extent that it seeks to dismiss Count III of the Second Amended Complaint for breach of fiduciary duty.  Additionally, I deny the CYF Motion to Dismiss to the extent that it seeks to dismiss Count III of the Second Amended Complaint against the individual CYF defendants for breach of fiduciary duty.

-44-

**Punitive Damages**

Under Pennsylvania law, punitive damages are justified only when the plaintiff has established that the defendant acted "in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others." Phillips v. Cricket Lighters, 584 Pa. 179, 883 A.2d 439, 445-446 (2005); see also Boring v. Google Inc., 362 Fed.Appx 273, 282 (3d Cir. 2010) (citing Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747-748 (1984)).  In Feld v. Merriam the Supreme Court of Pennsylvania stated that "Pennsylvania law provides that a defendant must have engaged in outrageous or intentional, reckless or malicious conduct to sustain a claim for punitive damages."

The CHOR Motion to Dismiss seeks to dismiss punitive damages, arguing that defendants' conduct was neither outrageous nor carried out with reckless indifference.  In response, plaintiffs argue that the Second Amended Complaint adequately pleads that defendants acted deliberately with drastic consequences for the minor children, and as such, defendants' conduct constituted at least reckless indifference.

I agree that for the purposes of a motion to dismiss, plaintiff has adequately pled facts which, if proven, could support an award for punitive damages.  Young v. Westfall, 2007 WL 675182 (M.D.Pa. March 1, 2007).  In Young the district

court stated, "Although the facts may later prove at most that defendants were merely negligent, discovery is necessary to help make this determination. Dismissing plaintiffs' punitive damages claim now at the pleading stage would be premature."

Accordingly, to the extent that the CHOR Motion to Dismiss seeks to dismiss plaintiff's claims for punitive damages, the motion is denied.

### Qualified Immunity

Qualified immunity may apply to all public officials and must be analyzed in light of the circumstances of each particular case.  Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 573 (2009).

Qualified immunity is an affirmative defense that must be pled by a defendant who is a government official. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).  It does not simply protect a defendant official from liability, but rather from having to defend suit. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

If qualified immunity is to be defeated, plaintiff must satisfy a two-prong test.  Initially, he must establish

that the government official violated a "basic, unquestioned constitutional right". Harlow, 457 U.S. at 815, 102 S.Ct. at 2736-2737, 73 L.Ed.2d at 408 (citing Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975)).

Next, plaintiff must establish that the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [minors], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." Harlow, 457 U.S. at 815, 102 S.Ct. at 2737, 73 L.Ed.2d at 409 (citing Wood, 420 U.S. at 322, 95 S.Ct. at 1001, 43 L.Ed.2d at 225).

### Individual Defendants in their Official Capacity

Plaintiff's Response to the CYF Motion to Dismiss and Plaintiff's Response to the CHOR Motion to Dismiss do not offer any opposition to defendants' argument that defendants in their official capacities are protected by qualified immunity. Plaintiff instead argues solely that defendants, in their individual capacities, are proper parties to the instant lawsuit.

Additionally, "state law claims raised against a public official in his official capacities are necessarily barred by the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8545, because such an official necessarily acts

within the scope of his office or duties, entitling him to
official immunities." DeVatt v. Lohenitz, 338 F.Supp.2d 588,
599 (E.D.Pa. 2004)(Gardner, J.)(citing Damron v. Smith,
616 F.Supp. 424, 426 (E.D.Pa. 1985)(Troutman, S.J.)).

　　　　As such, to the extent that the CYF and CHOR Motions
to Dismiss seek to dismiss claims against defendants Scotto,
Thomas, Rock, Morrissey, Rivera, Reece, Warwick, and Quinones in
their official capacities, the motions to dismiss are each
granted.

### Individual Immunity -- Count I

　　　　The doctrine of qualified immunity "insulates
government officials who are performing discretionary functions
'from liability for civil damages insofar as their conduct does
not violate clearly established statutory or constitutional
rights of which a reasonable person would have known.'" James v.
City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012)(quoting
Harlow, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410).

　　　　Defendants argue that they should be immune from
liability because they are government actors engaged in
discretionary conduct where it was not clear that their conduct
-- not informing a guardian ad litem of instances of sexual
misconduct through other means when a detailed and complete case
file, which is available to the guardian ad litem, contains such
information -- would violate a constitutional right.

Specifically, defendants argue that because the complaint does not describe any request that the guardian ad litem made to the individual defendants for such information, the individual defendants did not violate a clearly established constitutional right because they acted in accordance with the January 8, 2009 Order of Judge Cody.[62]

Plaintiff alleges that defendants knew of the sexual abuse to which the minors were subjected and took no action whatsoever to remediate minors' circumstances and protect them from further ongoing sexual abuse.[63]

The constitutional right at issue is "clearly established" where the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987).

---

[62]    Judge Cody's January 8, 2009 Order stated: "Any individual or agency having relevant information pertinent to the child(ren), including but not limited to medical, psychological and educational information, is hereby ordered and directed to release the same, if requested, to the above referenced attorney/guardian ad litem, pursuant to Section 6311(b)(2)." See Second Amended Complaint ¶ 23.

[63]    Plaintiff's Response to CYF Motion to Dismiss and Plaintiff's Response to CHOR Motion to Dismiss cite portions of a case which describes a caseworker's protection under "absolute immunity" not "qualified immunity". See Barkley v. Westmoreland, 853 F.Supp.2d 522, 529-530 (W.D.Pa. 2012). As such, plaintiff's argument that the within case mimics the situation in Barkley, is inapplicable because the argument raised by defendants is that qualified immunity applies.

A court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the official to determine whether a reasonable state actor could have believed his conduct was lawful. <u>MFS Inc. v. DiLazaro</u>, 771 F.Supp.2d 382, 449 (E.D.Pa. 2011) (Slomsky, J.) (internal quotation omitted).

> For reasonable officials to be on notice that their conduct would be unlawful, there need not be a previous precedent directly on point.  Rather, there need only be some but not precise factual corres-pondence between relevant precedents and the conduct at issue, so that in the light of pre-existing law the unlawfulness [would be] apparent.

<u>Larsen v. Senate of Committee of Pennsylvania</u>, 154 F.3d 82, 87 (3rd Cir. 1998)(internal citations omitted).

Here, the individual defendant employees of CHOR and CYF are entitled to qualified immunity from suit based on a violation of the minors' right to due process because a reasonable officer in their position could not have known that he or she was violating the minors' constitutional rights when their actions were in compliance with a court order.  <u>See Bowser v. Blair County Children & Youth Services</u>, 346 F.Supp.2d 788, 795 (W.D.Pa. 2004) in which the district court granted qualified immunity where defendants seized a minor plaintiff in accordance with an oral order of the court.

As such, the CYF and CHOR Motions to Dismiss are each granted to the extent that they seek to dismiss plaintiff's

Section 1983 claim in Count I against defendants Scotto, Thomas, Rock, Morrissey, Rivera, Reece, Warwick, and Quinones in their individual capacities because the qualified immunity applies to each of the individual defendants.

### Individual Immunity -- Counts II and III

#### Official Immunity

The Pennsylvania Political Subdivision Tort Claims Act provides that

> An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

42 Pa.C.S.A. § 8545.

"Where an employee commits 'an act [constituting] a crime, actual fraud, actual malice[,] or willful misconduct,' that employee is excepted from the otherwise applicable official immunity of 42 Pa.C.S.A. § 8545." DeVatt, 338 F.Supp.2d at 599 (citing 42 Pa.C.S.A. § 8550).

The CYF Motion to Dismiss argues that defendants Scotto, Thomas, Rivera, Reece, Warwick, and Quinones should not be liable because their actions were within the scope of their employment and do not rise to the level of willful misconduct.

Plaintiff's Second Amended Complaint alleged that the conduct of each individual defendant constituted willful

misconduct when defendants failed to notify the guardian ad litem or take appropriate action after learning of an incident of sexual misconduct involving the minors.  Plaintiff further sufficiently alleged that the individual defendants committed the tort of intentional infliction of emotional distress.  As such, the exception to the otherwise applicable official immunity for an employee who commits willful misconduct applies, and the individual defendants are not protected by official immunity.

Accordingly, to the extent that the CYF Motion to Dismiss seeks to dismiss claims against the CYF individual defendants in their individual capacities because of official immunity, the motion is denied.

### High Public Official Immunity

The CYF Motion to Dismiss argues that that the doctrine of high public official immunity should protect CYF employees from individual liability and from suit.

"Under Pennsylvania law, 'high public officials' are absolutely immune from tort liability stemming from action taken within the scope of their authority." Seybold v. Gunther, 393 F.Supp. 604, 606 (E.D.Pa. 1975)(Bechtle, J.) aff'd sub nom. Gunther v. Department of Transportation, Commonwealth of Pennsylvania, 524 F.2d 1403 (3d Cir. 1975) and aff'd, 524 F.2d 1404 (3d Cir. 1975) (citing Montgomery v. Philadelphia,

392 Pa. 178, 140 A.2d 100 (1958)).  The doctrine "immunizes high public officials from state law claims for actions taken in the course of the official's duties or powers and within the scope of the official's authority." Kohn v. School District of City of Harrisburg, 817 F.Supp.2d 487, 512 (M.D. Pa. 2011).

"An official's status as a high public official for purposes of absolute immunity is determined on a case-by-case basis, and depends on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Kelleher v. City of Reading, 2001 WL 1132401, *4 (E.D.Pa. September 24, 2001)(Padova, J.).

Here, CYF has not argued that defendants' positions as either caseworkers or supervisors are policy-making positions. Nor does the CYF Motion to Dismiss allege that the nature of the duties implicit in the position or the importance of the office should afford defendants absolute immunity under the high public official doctrine.

Accordingly, to the extent that the CYF Motion to Dismiss seeks dismissal of claims against the CYF individual defendants in their individual capacities because of high public official immunity, such motion is denied.

## CONCLUSION

For the reasons expressed above, the CYF Motion to Dismiss and the CHOR Motion to Dismiss are each granted in part and denied in part.

Specifically I grant the CYF Motion to Dismiss to the extent that it seeks dismissal of the claims against CYF as an improper plaintiff.  Accordingly, I dismiss the claims against CYF and grant plaintiff leave to amend his complaint to include the proper defendant.

Additionally, I grant the CYF Motion to Dismiss to the extent that it seeks dismissal of plaintiff's Monell municipal liability claim in Count I based upon a policy or custom, for failure to train under a pattern-of-violation theory, and for state-created-danger liability.  Accordingly, I dismiss such claims from Count I of the Second Amended Complaint and grant plaintiff leave to amend his complaint consistent with this Opinion.

I deny the CYF Motion to Dismiss to the extent that it seeks dismissal of Count I based on plaintiff's Monell municipal liability claim for failure to train under a single-violation theory.

I grant the CHOR motion to dismiss to the extent that it seeks dismissal of Count I based on state-created-danger

liability.  Accordingly, I dismiss that claim against the CHOR defendants from Count I.

Furthermore, I grant the CYF Motion to Dismiss to the extent that it seeks dismissal of plaintiff's pendent state claim for intentional infliction of emotional distress against defendant CYF.  I also grant the CYF Motion to Dismiss to the extent that it seeks dismissal of the claim of minor I.J.P. for intentional infliction of emotional distress against the individual CYF defendants.  Accordingly I dismiss such claims against the CYF defendants and grant plaintiff leave to amend his complaint consistent with this Opinion.

I grant the CHOR Motion to Dismiss to the extent that it seeks dismissal of the claim of minor I.J.P. for intentional infliction of emotional distress against the individual CHOR defendants.  Accordingly I dismiss such claim against the CHOR defendants and grant plaintiff leave to amend his complaint consistent with this Opinion

I grant the CYF Motion to Dismiss to the extent that it seeks dismissal of plaintiff's claim in Count III for breach of fiduciary duty against defendant CYF.  I deny the CHOR Motion to Dismiss to the extent that it seeks dismissal of plaintiff's claim in Count III for breach of fiduciary duty against the CHOR defendants.

Finally, I grant the CYF and CHOR Motions to Dismiss to the extent they seek qualified immunity for all claims for the individual defendants in their official capacities. Furthermore, I grant the CYF and CHOR Motions to Dismiss to the extent that they seek qualified immunity for the claim in Count I for the individual defendants in their individual capacities.

However, the CYF and the CHOR Motions to Dismiss are denied in all other respects.

Accordingly, as a result of these rulings, the following claims remain in plaintiff's Second Amended Complaint: (1) a claim in Count I of the Second Amended Complaint against CYF for Monell municipal liability under a single-violation theory of liability; (2) a claim in Count II of the Second Amended Complaint against CHOR, the individual CHOR defendants in their individual capacities, and the individual CYF defendants in their individual capacities for intentional infliction of emotional distress to minor K.J.; and (3) a claim in Count III of the Second Amended Complaint against CHOR, the individual CHOR defendants in their individual capacities, and the individual CYF defendants in their individual capacities for breach of fiduciary duty.