IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                                    :
JEREMIAH KANE, as *guardian ad litem* of          :        CIVIL ACTION
K.J. AND I.J.P. a/k/a I.P., both minors,           :
                                    Plaintiffs,    :        NO. 12-6649
                                                    :
        vs.                                         :
                                                    :
COUNTY OF CHESTER, PENNSYLVANIA and               :
THE CHILDREN'S HOME OF READING,                   :
                                    Defendants.    :
_____              :

AMENDED MEMORANDUM[1]

Perkin,  M.J.                                                           July 25, 2016

        Presently before this Court is the Plaintiffs' Petition to Compromise and Settle the

Minors' Claim.  For the reasons discussed in this Memorandum, the Court will grant the Petition

except that counsel's fee will be reduced to thirty-eight and one-half percent of the total

settlement amount, instead of the forty percent fee requested.

## I.      BACKGROUND.

        In this case, Plaintiff, as guardian *ad litem* for Plaintiff minors K.J. and I.P., two

biological half-brothers, brought this action alleging violations under 42 U.S.C. § 1983,

Intentional Infliction of Emotional Distress and Breach of Fiduciary Duty due to instances of

inappropriate sexual conduct/abuse of K.J. and I.P. by their foster brother I.S., who was also a

minor.  The instances of inappropriate conduct took place over a period of sixteen (16) months

_____

[1]        Following issuance of the Memorandum and Order on July 15, 2016, counsel made the Court
aware of an important typographical/grammatical error on page nine of the Memorandum.  In this Amended
Memorandum, the Court corrects the word "duplicitous" to "duplicative." Thus, the correct sentence is "These total
charges of $53,100 appear unsupported by the duplicative and vague billing descriptions and the billed number of
hours should be reduced."  In addition, the counsel fee total on page nine and the difference between counsel fees of
40% and 38.5% of the net settlement on page eleven are also corrected in this Amended Memorandum and the
Corrected Order.

while all three minors lived in a foster home in Chester County, Pennsylvania after being placed

in that home by The Children's Home of Reading Youth and Family Services, Inc. ("CHOR"), a

non-profit private foster care agency.  Plaintiffs allege that, despite repeated complaints by the

foster parents to CHOR and Chester County reporting the inappropriate behavior of I.S., he was

not removed from the home in a timely fashion and caused harm to both K.J. and I.P.  Both K.J.

and I.P. have subsequently been legally adopted into the same family, have received intensive

therapy and are happily living with their family in Westmoreland County, Pennsylvania.

The parties reached terms of settlement after mediation before the undersigned

and a hearing was held on May 31, 2016 regarding the Plaintiffs' Petition.[2] Since I acted as

mediator in this matter, I am very familiar with the facts and circumstances that led to the

settlement.

## II.     LEGAL STANDARDS FOR A MINOR'S SETTLEMENT.

Eastern District of Pennsylvania Local Rule of Civil Procedure 41.2 provides that

all claims of a minor which shall be compromised, settled or dismissed must be approved by the

court. Local R. 41.2(a).  In addition, subsection (c) of the rule provides:

> (c) No counsel fee, costs or expenses shall be paid out of any fund obtained for a
> minor, incapacitated person or such decedent's estate as a result of a compromise,
> settlement, dismissal or judgment unless approved by the court.

*Id.* at § 41.2(c).   In addition, Pennsylvania Rule of Civil Procedure 2039(a) provides that "no

action to which a minor is a party shall be compromised, settled or discontinued except after

---

[2]        At the time of the mediation, this case was assigned to the Honorable Joseph F. Leeson, Jr. It was referred to me to conduct a settlement conference. That mediation was successful and the terms of settlement were agreed upon by the parties subject to approval of the settlement as a minors' compromise by the Court. At that point in time, counsel for the parties agreed to consent to jurisdiction before me pursuant to 28 U.S.C.§ 636(c), thereby giving me authority to review the proposed settlement terms.

approval by the court pursuant to a petition presented by the guardian of the minor." Pa. R. Civ.

P. 2039(a). Subsection (b) states that "when a compromise or settlement has been so approved

by the court, . . . the court, . . . shall make an order approving or disapproving any agreement

entered into by the guardian for the payment of counsel fees and other expenses out of the fund

created by the compromise. . . ." PA. R. CIV. P. 2039(b).

As noted by the Honorable Eduardo C. Robreno in *Nice v. Centennial* . . . "under

Local Rule 41.2, in a federal civil rights action, it is appropriate to apply the rule of decision

prescribed by state law in determining the fairness of a minor's compromise and the

reasonableness of any attorneys' fees allocated from that settlement." *Nice*, 98 F. Supp.2d 665,

669 (E.D. Pa. 2000)(citations omitted). Other federal Judges have also looked to state law to

determine the fairness of the proposed settlement. *See Lee v. Victoria's Secret, LLC*, Civ. A. No.

10-3662, 2012 WL 628015 (E.D. Pa. Feb. 27, 2012)(same)*(*citing *Calvert v. General Acc. Ins.

Co.,* 2000 WL 124570, at *5 n.2 (E.D. Pa. 2000); *Nice,* 98 F. Supp.2d at 669; *Bradley v. GMAC

Ins. Co.*, 320 Fed. App'x. 125, 126 (3d Cir. 2008)(non-precedential)(upholding district court's

order reducing attorney fees to be subtracted from minor's settlement after applying factors in Pa.

R. Civ. P. 1716) and *Johnson v. Clearfield Area Sch. Dist.*, 319 F. Supp.2d 583, 586 and n.2

(W.D. Pa. 2004)(applying state law despite similar local rule)).

## III.     FAIRNESS OF THE SETTLEMENT AMOUNT.

To ensure the protection of the minors' best interests, "the petition [for approval

of a settlement] should include all of the relevant facts and the reasons why the [minors']

guardian believes the settlement is desirable and why it is in the minor[s'] best interests to settle

the action." *Lee*, 2012 WL 628015, at * 2 (quoting *Johnson*, 319 F. Supp.2d at 587 (quoting

*Calvert*, 2000 WL 124570 at *5 (internal quotation omitted))).   Further, "relevant facts include

'a description of the minor's physical and/or psychological condition, a statement and/or

discussion regarding the minor's current physical and/or mental health needs, evidence of the

extent of the minor's condition, and the need for future medical and/or psychological care, as

well as future expenses.'" *Id.* (quoting *Id.*)  "Courts should give 'considerable weight' to the

judgment of the parties and counsel, as they are 'typically in the best position to evaluate the

settlement.'" *Id.* (quoting *Henderson ex rel. Bethea v. Nationwide Mutual Ins. Co.*, No. 00-1215,

2001 WL 43648, at *2 (E.D. Pa. Jan. 4, 2001)).

   In this case, I was deeply involved in the mediation which resulted in a settlement

in the sum of $2,850,000, the net proceeds of which are to be divided between the two minors. In

addition, I was aware at the time of the mediation that a portion of the settlement for each minor

child would be structured in order to provide funding for their future education as well as a

lifetime annuity.  At the conclusion of the mediation, it was my opinion that the gross amount of

the settlement was appropriate.   In support of the Petition, counsel provided affidavits of the

parents of both minors regarding their physical and/or psychological condition, a statement of the

guardian ad litem, the expert report of Annie Steinberg, M.D. and a quotation for a proposed

structured settlement for both minors.  These documents, as well as the testimony of the minors'

parents at the hearing on the Petition held on May 31, 2016 provide updated information

regarding the minors' current physical and/or mental health needs, evidence of the extent of their

condition, and their need for future medical and/or psychological care and future expenses.

   I now find that the gross amount of the settlement is fair and appropriate.  Thus, I

must next determine whether the counsel fees and reimbursement of costs requested by counsel

should be approved.

IV.     **REASONABLENESS OF PROPOSED COUNSEL FEES.**

              In determining the appropriateness of counsels' fee, we look to the law of the

Commonwealth of Pennsylvania for guidance. I note that the forty percent (40%) fee is based

upon a formula set forth in a contingent fee agreement entered into by the Guardian Ad Litem for

the minors. I take into account the risk of nonpayment that attorneys accept when they handle

matters on a contingent fee basis. Without the willingness of lawyers to handle such cases, a

large portion of the population needing legal representation would be without the ability to obtain

competent legal counsel. *Gilmore ex rel Gilmore v. Dondero*, 582 A.2d 1106 (Pa. Super. 1990).

Nevertheless, Pennsylvania law provides that in cases involving minors, the Court is not bound

by the terms of a contingency fee agreement. As a result, this Court has discretion to adjust the

amount of counsel fees to be subtracted from a settlement involving a minor. *Johnson v.

Clearfield Area School District*, 319 F. Supp.2d 583 (W.D. Pa. 2004).

              We must first determine whether or not the Court of Common Pleas of the county

that has jurisdiction over the minors has adopted a presumptive lodestar for fees involving the

settlement of minors' claims. In this case, at relevant times, the children resided in Chester

County which has a presumptive lodestar of 25%. *Gilmore v. Dondero*, 582 A.2d 1106, 1109-

1110 (1990), *aff'd*, 37 F.3d 1489 (3d Cir. 1994).  Both at the time of settlement and at present,

the children reside in Westmoreland County which has no presumptive lodestar for fees

involving settlement of minor's claims.  In this case, Plaintiffs' counsel requests a fee equal to

40% of the net settlement amount.

              The Court's research indicates that no county in Pennsylvania sets a 40% lodestar

for fees involving settlement of mnor's claims.   Although this action is brought as a federal

question case seeking relief under 42 U.S.C. section 1983, the Court will follow Pennsylvania

procedural law as it is appropriate to apply that body of law in determining the fairness of the

minors' compromise and the reasonableness of attorneys fees deducted from the settlement fund.

*Nice*, 98 F. Supp.2d 665.  In determining the reasonableness of attorneys fees deducted from the

settlement fund, the *Nice* court considered the following factors used by the Pennsylvania

Supreme Court to assess the effectiveness of counsel's performance:

> (1) the amount of work performed; (2) the character of the services performed; (3)
> the difficulty of the problems involved; (4) the importance of the litigation; (5) the
> degree of responsibility incurred; (6) whether the fund involved was "created by"
> the attorney; (7) the professional skill and standing of the attorneys in their
> profession; (8) the result the attorneys were able to obtain; (9) the ability of the
> client to pay a reasonable fee for the services rendered; and (10) the amount of
> money in question.

*Nice*, 98 F. Supp.2d at 671 (citing *Gilmore*, 582 A.2d at 1109-10 (quotations omitted).  These

effectiveness factors are hereafter examined.

> Counsel for the minors submitted significant and sufficient documentation in

support of the counsel fee claim.  Plaintiffs' counsel describes various issues that arose with

establishing Defendants' liability and there was a possibility that the Plaintiffs' might not have

received any recovery in this case.   The Court recognizes that counsel "created the fund" in

question through their negotiations and other legal work on behalf of the Plaintiffs and the gross

settlement amount represents a good result for the Plaintiffs.

> Five attorneys were involved in this case at various times on behalf of Plaintiffs,

and all have submitted their usual hourly rate, four at $600 per hour and one at $225 per hour.

The Guardian Ad Litem submitted an affidavit in which he states that he initially retained Neil

Jokelson and Gerard Egan and agreed to the 40% contingent fee agreement when the case was

initiated in 2012 because he thought it was in the minors' best interests. Pet., Ex. 3. To support

this contention, counsel provided the Court with their own affidavits as well as an affidavit of the

Honorable Stephen M. Orlofsky, former United States District Judge and United States

Magistrate Judge for the District of New Jersey, who is now a partner at Blank Rome, LLP in

Princeton, New Jersey, specializing in areas of complex litigation and alternative dispute

resolution. *See* Pet., Ex. 5.   Judge Orlofsky opines, based on his knowledge of this case gleaned

from review of documents prepared in anticipation of his mediation of this case in an all-day

session on March 8, 2016, including all parties' detailed mediation statements, extensive expert

reports which totaled over 120 pages without exhibits or CVs and summary judgment filings

which exceeded 550 pages without exhibits, that all counsel exhibited a high degree of time,

skill, care and attention to this case.  Moreover, he notes that over 20 depositions were taken and

over 49,000 pages of documents were exchanged in discovery.  Judge Orlofsky then states that he

has worked with both David and Derek Jokelson in the past as a mediator and as opposing

counsel and that they each have an excellent reputation for their professionalism and ability to

handle difficult complex litigation and that the result obtained for the Plaintiffs was achieved

only through the skill and effort of these attorneys.  He finally opines that the costs and expenses

which exceed $75,000 are fair and reasonable given the quality of retained experts, number of

depositions conducted and the nature and complexity of the case; and that the $600 hourly

market rate is applicable in the community of attorneys handling complex federal court litigation

in the Eastern District of Pennsylvania.  He further opines that counsel was steadfast in their

representation of the Minor Plaintiffs and the Court is convinced that, given both the nature of

the case and the potential risk of litigation, that counsel adequately and competently represented the Plaintiffs.

We have reviewed the itemized billing statements provided by all counsel in support of the Petition.  Counsel submitted individual bills which record, in 6 minute increments, a total of 2,096.6[3] hours worked in this case which spanned four years from 2012 through settlement in 2016.  Gerard P. Egan, Esquire, billed 91 hours at $600 per hour; Neil Jokelson, Esquire, billed 118.9 hours at $600 per hour; David E. Jokelson, Esquire, billed 891 hours at $600 per hour; Derek E. Jokelson, Esquire, billed 963 hours at $600 per hour and Brian McCarthy, Esquire, billed 32.7 hours at $225 per hour. The Court takes into account the fact that counsel took the instant case on a contingency fee basis and thus took a risk that they might not receive any payment for their services.  Nonetheless, there are factors that weigh against counsel obtaining a fee of nearly double the presumptive lodestar provided in Chester County cases involving the settlement of minors' claims.  Counsel note that the requested 40% contingent legal fee[4] is less than the estimated number of hours involved multiplied by counsel's reasonable hourly billing rate which totals $1,244,071.50.  Deducting Mr. Egan's $54.00 parking expenses, that total should actually be $1,244,017.50.

Weighing all of the factors in assessing the effectiveness of counsels'

---

[3]     This total number of hours worked is .1 less than the hourly totals set forth in the Petition. Pet., p. 35.  Mr. Egan's billing summary contains a total of $54.00 of parking expenses which were incorrectly counted as .1 in his total number of billed hours.  *Id.*, Ex. 6-D.  In fact, deducting the parking expenses from this calculation makes Mr. Egan's billing on this case $54,600, representing 91 hours worked at $600 per hour.  *Id.*

[4]     The July 15, 2016 Memorandum stated that the 40% contingent legal fee was $1,109,926, consistent with amount listed on pages 10 and 34 of the Petition, prior to the deduction of additional pre-Petition costs.  This amount varied from the 40% contingent legal fee of $1,109,889.84 listed on pages 3 and 33 of the Petition and at page 2 of Plaintiffs' proposed order which was calculated following the deduction of additional pre-Petition costs.  For clarity, the Court has removed the numerical amount in the July 15, 2016 Memorandum.

performance, the Court concludes that counsel is entitled to an upward departure of the 25%

Chester County lodestar.  However, the Court believes that a 38.5% counsel fee of the net

settlement totalling $1,068,268.97[5] is fair and reasonable, given some discrepancies noted in

counsels' submitted bills.

Neil Jokelson's bill shows a charge of $21,000 for 35 hours worked from

February 27 through June 10, 2012 to "review all file materials received from Mr. Kane,

including extensive records of the minors in his possession, numerous conversations with Mr.

Kane for clarification, Court rules re dependency, statutes, case law and other research."  Pet.,

Ex. 6-C, p. 1.  This entry does not include $2,100 separately charged for a 2.5 hour meeting on

February 27, 2012 with Jeremiah Kane and Gerry Egan.  *Id.*  In a similar fashion as Mr. Jokelson,

Mr. Egan charged $6000 for 10 hours expended from March 2010 to February 2011 for "ongoing

conferences and correspondence with Jeremiah Kane about guardian ad litem issue" and $24,000

for 40 hours worked from February 2012 to December 2014 for "ongoing conferences and

correspondence with Jeremiah Kane and Neil Jokelson about litigation and review/analysis of

documents as they come in."  *Id.*, Ex. 6-D.  The Court is aware that "a fee petition is required to

be specific enough to allow the district court to determine if the hours claimed are unreasonable

for the work performed". . . and the petition need not "contain the exact number of minutes spent

nor the precise activity to which each hour was devoted nor the specific attainments of each

attorney."  *Washington v. Philadelphia Cnty. Court of Common Pleas*, 89 F.3d 1031, 1037, 1038

(3d Cir. 1996)(internal quotations and citations omitted).  These total charges of $53,100 appear

---

[5]     The July 15, 2016 Memorandum Opinion contained an incorrect calculation of the 38.5% counsel fee.

unsupported by the duplicative[6] and vague billing descriptions and the billed number of hours should be reduced.

It appears that drafting the Complaint was accomplished after twelve revisions which took Neil Jokelson 20.1 hours over a period of five months from June 11, 2012 through November 28, 2012, for which he charged a total of $12,060. *Id.*, Ex. 6-C. Due to the fact that Mr. Jokelson went on to amend the Complaint four more times and billed in excess of 11 hours for drafting those Amendments, the Court finds that the 20.1 hours billed for drafting the Complaint was excessive and should be reduced.

On January 27, 2015, all three Jokelson attorneys met for two hours to "discuss case status and facts" and each attorney separately charged $1200 for a total of $3600.  After this meeting, Neil withdrew from the case due to his retirement and Derek and David Jokelson went on to thoroughly review all aspects of this case.  Hours are not reasonably expended if they are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  It is questionable whether the time spent in this session which was followed by a thorough review of the documents and the file was otherwise necessary.

All of the attorneys in this case have billed their full hourly rate for travel time. The time charged by counsel for travel and attendance at a premediation meeting at the Jokelson law office on March 7, 2016, mediation at the Blank Rome law office in Philadelphia with Judge Orlofsy on March 8, 2016 and mediation in Allentown on March 16, 2016 varies.  We note that several courts in our circuit have reduced counsel's rate by one-half for travel time.  *See Gonzalez v. Bustleton Servs.*, Civ. A. No. 08-4703, 2010 WL 3282623, at *3 (E.D. Pa. Aug. 10,

---

[6]        *See supra*, p.1 n.1.

2010)(citing various cases).  The Jokelsons each billed 3.5 hours of time for attendance at the

March 7 pre-mediation meeting, Mr. Egan billed 4.5 hours and Mr. McCarthy billed 6 hours for

the same meeting.  It is understandable to this Court to allow both Mr. Egan and Mr. McCarthy

an additional hour for travel time to this meeting into Philadelphia from their offices in Exton,

therefore the Court finds that Mr. McCarthy's bill should be reduced one and one-half hours to

reflect the same amount of time expended as Mr. Egan. For the March 8, 2010 mediation, both

Derek and David Jokelson billed 10 hours for attendance and debriefing with each other and the

parents of the minors; Mr. Egan billed 10 hours for his attendance and travel with Mr. McCarthy

and Mr. McCarthy billed 11 hours for attendance.  Again, the Court finds that Mr. McCarthy's

bill should be reduced one hour to reflect the same attendance and travel time as Mr. Egan for

this mediation.  Similarly, for the mediation here in Allentown on March 16, 2016, David and

Derek Jokelson each billed 11 hours including travel time, Mr. Egan billed 10 hours and Mr.

McCarthy billed 11.5 hours.  Mr. McCarthy's bill should be reduced 1.5 hours to reflect the same

time expended as his senior counsel, Mr. Egan.  For travel and attendance at these three events,

Mr. McCarthy's billing should be reduced 4 hours at $225 per hour, or $900.

V.      **CONCLUSION**

        For the reasons detailed above, the circumstances of this case warrant approval of

the requested fee less some deductions, which support reduction of the fee allocation from 40%

to 38.5% of the net settlement. The settlement was reached due to extraordinary circumstances

and the result obtained has the potential to change the lives of the minor children. Counsel took a

great monetary risk in taking this case as noted by Gerard Egan, Esquire, co-counsel for the

Plaintiffs, who explained that he had great difficulty finding attorneys  willing to share the risk of

such litigation. In this case, the risk of litigation directly benefitted the Plaintiff minors.  This

reduction of the counsel fee by $41,620.87[7] will provide a direct benefit to the minor Plaintiffs.

The parents of the minors testified at the May 31, 2016 hearing that they both foresee that at least

one of the minor Plaintiffs will need additional ongoing psychiatric therapy, and the Court

believes that these additional funds will assist both minors in attaining necessary additional

mental health and behavioral support.

An appropriate order follows.

---

[7]     The Court's July 15, 2016 Memorandum Opinion contained an erroneous total of the reduced
counsel fee.